# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

LAMAR WALTON, DOB 01/23/1977, and
VERNELL BULLOCK, DOB 12/11/1977

CRIMINAL COMPLAINT

CASE NUMBER: 08-124 M(AEG)

I, James Krueger, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On October 28, 2008, in the State and Eastern District of Wisconsin, the above-named individuals did knowingly and intentionally to attempt possess with the intent to distribute and distribute in excess of 500 grams of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, §§ 846, 841(a)(1), and 841(b)(1)(B).

I further state that I am a City of Milwaukee Police Detective and Task Force Agent with the Federal Bureau of Investigation, presently assigned to the Milwaukee High Intensity Drug Trafficking Area, Drug Gang Task Force, and that this complaint is based on the facts contained in the attached affidavit.

Continued on the attached sheet and made a part hereof: ✔ Yes

Sworn to before me and subscribed in my presence,

October 29, 2008
Date

at Milwaukee, Wisconsin
City and State

Aaron E. Goodstein, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS

I, James H. Krueger, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA), presently assigned to the Milwaukee District Office, Chicago Field Division, United States Department of Justice (DOJ). As a Federal law enforcement officer, I have been employed by the DOJ for approximately 8 years, and have been a Special Agent with the DEA since April, 2000. In the course of my work, I investigate violations of federal narcotics laws and related violations, including federal firearms and money laundering offenses.

2. This affidavit is based upon my personal knowledge and investigation, as well as information related to me directly or through reports by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. They include agents and officers from the DEA, the Milwaukee Police Department (MPD), and the Milwaukee High Intensity Drug Trafficking Area (HIDTA). This affidavit is also based upon information gained from interviews with informants and defendants, whose reliability is established separately herein.

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in narcotics trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States.

   b. I have also relied upon informants to obtain controlled substances from dealers.

1

c. I have extensive experience conducting street surveillance of individuals engaged in narcotics trafficking activities.

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, and cocaine base. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances.

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded. I also know the various code names used to describe controlled substances.

f. I know that large-scale drug traffickers often use electronic equipment, telephones (land-lines and cellular), and pagers to conduct illegal drug trafficking operations.

g. I know that drug dealers often put their phones in the names of others in order to distance themselves from phones that are utilized to facilitate the distribution of controlled substances.

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. On 10-27-2008, an established Confidential Informant (CI) working for the U.S. Drug Enforcement Administration was directed to place a call to Lamar Walton at (414)380-1414. During the call, the CI told Walton that the CI could supply Walton with a kilogram of cocaine, which the CI and Walton referred to as "Cadillac." The CI told Walton that the CI would be bringing the cocaine to Walton on Tuesday, October 28, 2008.

5. On 10-28-2008, at approximately 1:20 PM, at the direction of case agents, the CI contacted Walton at (414) 380-1414. The CI told Walton that the CI was driving

2

north to Milwaukee and instructed Walton to meet him at the College Avenue exit off of Interstate 94. The CI told Walton that the kilogram of cocaine would cost $28,000 by stating "it's today's date."

6. At approximately 2:13 PM, the CI again contacted Walton at (414) 380-1414. Walton told the CI he needed to get a different car before coming to meet the CI. The CI told Walton that the CI was in the Milwaukee area.

7. At approximately 2:55 P.M., the CI once again contacted Walton at (414) 380-1414. Walton stated he had to get his cousins car but was now on his way to meet with the CI. The CI complained about having to wait for Walton but agreed to do so.

8. At approximately 3:05 PM, agents observed a silver-colored Pontiac G6 enter the parking lot of the Hampton Inn and park across from the CI's vehicle. The CI walked to the Pontiac and got inside. The Pontiac then drove around the lot before stopping next to the CI's vehicle. The CI and Walton then walked to the CI's vehicle, and entered the vehicle. Agents had previously supplied the CI with a kilogram of a substance made to look like cocaine. After a brief conversation, the CI supplied Walton with the "cocaine," and Walton placed the "cocaine" in his pants and walked back to the Pontiac. Walton was then arrested by agents and officers.

9. After talking with agents, Walton agreed to cooperate. At approximately 4:43 PM, at the direction of case agents, Walton contacted Vernell Bullock at (414) 231-1656. Walton told Bullock that he had good news, that "Christmas came early...Miz-urder came through for me." Agents know "Miz-urder," A/K/A Murder, to be a cocaine distributor located in Chicago, Illinois. Walton stated that he would call Bullock once he had returned to the Milwaukee area. Walton told Bullock to "be on standby" and Walton

3

would call Bullock. Bullock appeared to be excited about the pending transaction.

10. At approximately 5:57 PM, Walton again contacted Bullock at (414) 231-1656. Bullock told Walton that he was in the projects. Walton directed Bullock to go to the McDonald's restaurant located near Walton's grandmother's house (which agents knew was located just east of the intersection of W. Appleton and W. Hampton Avenues in Milwaukee). Walton told Bullock to pull up on him and again stated "Christmas came early." Agents had previously placed Walton in the parking lot of the McDonald's restaurant, in his car on the north side of the lot facing southbound, and provided him with the kilogram of fake cocaine.

11. At approximately 6:12 PM, agents and officers observed a Chevrolet Tahoe bearing Wisconsin license plate 515-NXZ enter the McDonald's lot, eventually pulling alongside Walton's vehicle, facing northbound. Agents observed Bullock exit the Tahoe, walk over to Walton's vehicle, and get into the front passenger seat. After a short time, Bullock exited the vehicle. As agents and officers approached to arrest Bullock, Bullock threw the kilogram of fake cocaine back into the vehicle where it was recovered.

12. At approximately 6:55 PM, affiant and SA McCarthy took a statement from Walton regarding his meeting with Bullock. Walton stated, after Bullock got into Walton's vehicle, Walton told Bullock he had an extra "key" for Bullock. Walton stated "key" is short for kilogram of cocaine. Walton stated he told Bullock the "key" was $28,000 and that Bullock had a week and a half to pay it back. Bullock then replied, "Come on with it," meaning that he wanted the kilogram of cocaine. Walton stated he then took the kilogram of cocaine out from under his jacket and handed it to Bullock. Walton stated Bullock placed the kilogram of cocaine under his own jacket. Walton

4

stated Bullock exited Walton's car and was closing the passenger-side door when he noticed law enforcement approaching. Walton stated Bullock opened the door back up and threw the kilogram back inside Walton's vehicle just prior to his arrest.

13. Audio and video recordings of both operations were made by case agents, and confirm the accounts given by the CI and Lamar Walton regarding these transactions. In addition, I know from my training and experience that a kilogram of cocaine is a weight entirely inconsistent with possession for personal use, and is a bulk weight for packaging and distribution in smaller weights.

14. I believe that this affidavit establishes probable cause to believe that on October 28, 2008, Lamar Walton and Vernell Bullock committed the offense of Attempt to Possess With the Intent to Distribute in Excess of 500 Grams of Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B).